IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01210-REB-MJW

STERISIL, INC. a Colorado corporation,

    Plaintiff

vs.

PROEDGE DENTAL PRODUCTS, INC.,
a Colorado corporation, and
MARK A FRAMPTON, an individual,

    Defendants

## DEFENDANTS' MOTION FOR SANCTIONS

Defendants ProEdge Dental Products, Inc. and Mark A. Frampton (collectively, "ProEdge"), by and through their undersigned counsel and pursuant to Fed. R. Civ. P. 37, move this Court for an Order sanctioning Plaintiff Sterisil, Inc. ("Sterisil") for its improper discovery conduct, and in support thereof, states as follows:

### CERTIFICATION PURSUANT TO D.C.COLO.L.CivR 7.1

On May 2, 2018, counsel for ProEdge emailed and called counsel for Sterisil to confer. Sterisil's counsel has not responded to that effort to confer.

### I.    INTRODUCTION

Sterisil has grossly abused the discovery process in this case. Until just this week, Sterisil had produced *less than sixty* total documents. At the same time, Sterisil sought to delay the trial, but its motion was denied by this Court. Because of Sterisil's

continued failure to produce documents, ProEdge moved for an order compelling production of relevant documents, which this Court granted in its entirety. On April 30, in a transparent attempt to create cause for its requested delay, Sterisil produced 193,609 documents, totaling 568,400 pages. The documents Sterisil produced lack metadata, like custodian and date information, and are not searchable.[1] A dedicated team of a dozen attorneys could not review this many documents in the next three weeks. In short, it is a data dump without any effort to comply with the Court's order to produce requested documents. If they are all truly responsive, Sterisil's withholding the documents is the definition of litigation misconduct.

The requested documents relate directly to, among other things, Sterisil's damages theories on lost profits and a reasonable royalty, Sterisil's claim for willful infringement, and ProEdge's defense of equitable estoppel. At this late date, the most appropriate sanction is to exclude all evidence related to damages and willful infringement. The damages and willful infringement theories all require sales and marketing information such as competitive studies, communications with customers, communications among the parties, advertising materials, marketing data, and sales information and strategies. Sterisil refused to produce—and then hid in an avalanche of unsearchable documents—any documents from its sales and marketing staff, communications with customers, and market studies or data that are all relevant to these issues. Sanctions are warranted.

---

[1] The documents are actually PDF/A "archive" files, which means it may not even be possible to run a program to recognize the text in the documents and make them searchable.

2

## II.     FACTUAL BACKGROUND

Sterisil first made allegations of patent infringement against ProEdge in 2006. **Exh. A** at 144:14-145:2 (2018-04-02 Sterisil 30(b)(6) Deposition Transcript) (Sterisil informed a ProEdge representative "it sure appears as though this BluTab could very well be infringing on my patent."). ProEdge responded to these allegations at that time, arguing that its BluTab product did not infringe the '736 Patent. **Exh. B** (Letter from J. Brown Sterisil00285-00286). Following this initial exchange between the parties, the threatened lawsuit lay dormant for nearly seven years until Sterisil filed the present action in May of 2013. Sterisil may claim otherwise, but there is no way to test those claims without the documents for that seven-year period. Following the claim construction phase of the case, which lasted until early 2018, discovery finally began in February of 2018 after the parties both agreed to an expedited discovery schedule in order to efficiently and swiftly conclude the case. ECF No. 62.

Sterisil produced no documents as part of its initial disclosures on February 21, 2018. In response to Requests for Production and Interrogatories, Sterisil produced virtually no responsive documents timely, and only then produced less than sixty responsive documents, totaling six hundred pages. As the discovery cut-off grew closer, Sterisil continually refused to produce the additional documents that ProEdge requested in its discovery.[2] Numerous attempts by ProEdge to obtain additional document productions from Sterisil went unanswered. On March 30, 2018, ProEdge

---

[2] Sterisil never objected to ProEdge's discovery requests, and instead answered each request with language that "all responsive, non-privileged documents have been produced" or that such documents "will be produced as Plaintiff continues its search." **Exh. C** at 5 (Sterisil's Response to RFPs).

3

filed a motion to compel production of documents (1) listed in its Requests for Production and 2) in its March 27, 2018 letter (the "March 27 Letter") sent to Sterisil's counsel. *See* ECF No. 76; **Exh. D** (2018-03-27 C. Collard Letter to R. Pizarro). The Court granted ProEdge's motion on April 20, 2018 and ordered Sterisil to "produce on or before May 1, 2018, all additional documents in its possession which are responsive to the document production requests of the defendants as stated specifically in the March 27, 2018 document production letter." ECF No. 100 at 6. The Court noted that Sterisil's production has "significant gaps" and that "defendants are entitled to documents which will enable the defendants to address for the patent infringement claims and the claim for damages of Sterisil." *Id.*

On April 30, 2018, Sterisil produced a hard drive to ProEdge containing 193,609 documents, totaling 568,400 pages, in a blatantly inappropriate attempt to render this Court's order useless. The production consisted entirely of PDF-format documents that cannot be searched for text and had no metadata—such as custodian, date, to and from information, subject line—that would aid in the review of these documents. It is obvious that Sterisil did not review these documents for relevance or, more importantly, for compliance with the Court's order concerning the March 27 Letter, but instead decided to "dump" everything it had on ProEdge in a difficult-to-process format. This is evident from the thousands of irrelevant documents produced, including Best Buy customer refund receipts, Uganda water projects, and donation requests from mission centers. **Exh. E** (Collected Examples from Sterisil's Production).

4

Trial is less than three weeks away. Sterisil has tried to delay this trial before through its motions to bifurcate the damages portion and for leave to add another defendant. The Court denied both of these motions, stating that "it is reasonable to expect Sterisil to have assembled, at this late date, its evidence necessary to prove its damages" and "permitting the amendment [to add a defendant] sought by Sterisil would only add delay." ECF No. 99 at 3, 5. This document dump is merely another delay tactic. ProEdge is entitled to the imminent resolution of this case, and Sterisil's continued attempts to delay it cannot be tolerated.

### III.     LEGAL AUTHORITY

Under the Federal Rules of Civil Procedure, if a party, its officer, director, or managing agent, fails to comply with a court-issued discovery order, the court may impose a variety of sanctions. Fed. R. Civ. P. 37(b)(2)(A). These sanctions include "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," "dismissing the action or proceeding in whole or in part," or "treating as contempt of court the failure to obey an order." *See* Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).

Although an "extreme sanction," some courts have concluded that dismissal of a party's action was the appropriate punishment for its "flagrant bad faith" and for counsel's "callous disregard of their responsibilities." *NHL v. Metro. Hockey Club*, 427 U.S. 639, 642 (1976). This sanction is applied "where a party is explicitly ordered by the court to provide discovery but the party fails to respond in a proper or timely manner." *Adkins v. United States,* 816 F.2d 1580, 1582 (Fed. Cir. 1987); *Al Barnett & Son, Inc. v.*

5

*Outboard Marine Corp.*, 611 F.2d 32, 36 (3d Cir. 1979) (repeated failure to answer interrogatories as directed and refusal to appear for depositions warranted dismissal with prejudice); *Van Nostrand v. University of Minnesota*, 656 F.2d 315, 316 (8th Cir. 1981) (repeated failure to make full and timely responses to discovery requests and failure to comply with discovery orders despite explicit instructions from the district court warranted dismissal with prejudice). If the dismissed party fails to show an inability to comply, "an exercise of the power in proper circumstances is necessary 'to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Adkins*, 816 F.2d at 1582 (affirming dismissal of claims with prejudice because "the particular interrogatories sought information basic to the question of whether each plaintiff could maintain his or her individual claims) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962)). In *Adkins*, the Federal Circuit affirmed the dismissal of the appellants' claims with prejudice because "given the nature of the interrogatories, the repeated failures of appellants to meet discovery time limits, the order of the court setting the final deadline dates, and the absence of an explanation for delay, there was substantial justification for the [dismissal]." *Id.* at 1583.

In other instances, courts may preclude or limit the disobedient party's arguments stemming from the missing discovery. Fed. R. Civ. P. 37(b)(2)(A)(ii). For instance, in *Nike Inc. v. Wolverine World Wide, Inc.*, the court ordered both parties to "provide each other with full disclosure in response to requests for discovery." 43 F.3d 644, 648 (Fed. Cir. 1994). By the close of discovery, Nike had failed to produce discovery concerning its allegations of infringement premised on the doctrine of equivalents. *Id.* As a result,

6

the Court affirmed the grant of Wolverine's motion to preclude Nike's doctrine of equivalents argument at trial. *Id.* The Court noted that "Nike filed suit in February 1993; thus, Nike had over three years to investigate the merits of a possible doctrine of equivalents case." *Id.* at 648-49. This sanction of "precluding the pursuit of an unsupported claim was clearly appropriate here because the trial court had the right to manage its docket and require the parties to support their claims or drop them." *Id.* at 649. To remedy discovery violations, courts in this District have precluded patentees from presenting evidence on their damages theories. *See City of Aurora v. PS Sys.*, 720 F. Supp. 2d 1243, 1261-62 (D. Colo. 2010) (excluding patentees' damages evidence because "trial is two weeks away and the patentees still have not disclosed the basis for a damages calculation"). In general, trial courts are imbued with discretion in "choosing a sanction that is both 'just' and 'related to the particular claim which was at issue in the order to provide discovery.'" *Echon v. Sackett*, 2017 U.S. Dist. LEXIS 26145, at *13 (D. Colo. Jan. 23, 2017) (citing *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)).

## IV.    ARGUMENT

### A. Sterisil Has Callously Disregarded Its Discovery Obligations.

The parties are five years into this case and less than three weeks from trial. Sterisil's extended, willful, and improper discovery conduct is severe and must be sanctioned. Following its continued failure to produce documents identified in its Responses to RFPs, ProEdge sent the March 27 Letter in an effort to help focus Sterisil's search efforts on the most relevant and applicable documents reasonably

7

within Sterisil's possession. The letter clearly identified missing documents crucial to ProEdge's defense of Sterisil's damages claims. **Exh. D**. This Court agreed, noting "the March 27, 2018 letter demonstrates good cause to believe Sterisil likely has additional documents which have not been produced on each topic addressed in the letter." ECF No. 100 at 5.

*First*, ProEdge's requests were reasonable and proportional to the needs of the case. In fact, the documents sought were essential to the core claims of the case:

- **Lost Profits:** Sterisil is seeking over $9 million in lost profits, but in order to prove that award, it must show all four *Panduit* factors. *Smithkline Diagnostics, Inc. v. Helena Laboratories Corp.*, 926 F.2d 1161, 1165 (Fed. Cir. 1991) (a patentee is not entitled to lost profits if it fails to establish any one of the *Panduit* factors). The second *Panduit* factor is the "absence of acceptable, non-infringing substitutes." *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978). The existence of acceptable, non-infringing alternatives can only be determined by looking closely at the applicable market—the dental unit waterline cleaning product market here—and seeing if there are any competitors in the market other than the patentee and the alleged infringer. *Smithkline*, 926 F.2d at 1163. Sterisil has produced ***nothing*** on the relevant market. This is one key example, but without these documents, ProEdge is unable to determine whether competitors exist in order to attack Sterisil's lost profits claim.

8

- **Reasonable Royalty:**  Numerous *Georgia-Pacific* factors also require analysis of relevant market data, including "5. the commercial relationship between the licensor and licensee, such as, **whether there are competitors in the same territory in the same line of business;**" and "8. the established profitability of the product made under the patent, its commercial success, and its current popularity;" and "12. the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions."  *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (emphasis added).
- **Willfulness[3]:**  Evidence bearing on willful infringement, such as communications between the parties about pursuing a claim or statements to others concerning their infringement or lack thereof, would be contained in the requested documents.
- **Equitable Estoppel:**  The documents may show what efforts, if any, Sterisil took to enforce its rights between 2006 when it first raised the issue with BluTab and 2013 when it filed suit.

***Second***, there is no question that these documents should have been produced as part of Rule 26 disclosures. Fed. R. Civ. P. 26(a)(1)(A)(ii) ("without awaiting a discovery request," the disclosing party must provide to the other parties all documents

---

[3] It is unclear if Sterisil is still seeking a finding of willful infringement because they did not put it in the pretrial order, but if they are, it should be excluded for the reasons herein.

"in its possession, custody, or control and may use to support its claims or defenses"). They were not produced. Subsequently, this information should have been produced with Sterisil's damages expert's report. Its expert, Armando Chavez, reached a total calculation of $9.4 million in lost profits without relying on or providing any information or analysis of any Sterisil documents or information related to the applicable market. And finally, these documents should have been produced in response to ProEdge's Requests for Production. Fed. R. Civ. P. 34(b)(2)(B) ("the production must then be completed no later than the time for inspection specified in the request or another reasonable time"). They were not. Now, with trial less than three weeks away, Sterisil has produced no useable or identifiable information related to the dental unit waterline market to support its damages theories.

*Third*, Sterisil's April 30 production is intentionally and maliciously unusable. The 193,609 documents are not searchable, contain no metadata to help facilitate in contextual searching, and would cost ProEdge hundreds of thousands of dollars to assemble a team to review (assuming a complete review is even possible in three weeks, which is does not appear to be). This Court's order was narrowly tailored to the documents categorized in the March 27 Letter—"I order Sterisil to produce on or before May 1, 2018 all additional documents in its possession which are ***responsive to the document production requests of the defendants as stated specifically in the March 27, 2018 document production letter***." ECF No. 100 at 6 (emphasis added); *see also* **Exh. D**. Sterisil flagrantly disregarded this Court's directive by producing 193,609 documents and 568,400 pages. There is no way to know how many of these

10

are actually responsive. Sterisil appears to have hidden a needle in a colossal haystack of documents.

### B. ProEdge is Prejudiced by This "Discovery Dump."

This "document dump" is a poorly disguised attempt to prejudice ProEdge at trial or seek a delay. *Atlas Res., Inc. v. Liberty Mut. Ins. Co.*, 291 F.R.D. 638, 642 (D.N.M. 2013) ("'document-dumping' where Defendant's disclosures of material was presented in such a disorganized fashion as to violate the Rules of Professional Conduct and cause undue delay in the litigation of this case"). This Court previously agreed with ProEdge's argument that the requested documents were vital to the case, stating "the defendants are entitled to confirm or refute testimony and documents produced already with other documentary evidenced, including emails" and that "the requests of the defendants are ***reasonably specific***, and the documents requests are relevant to this litigation." ECF No. 100 at 4-5 (emphasis added). Without this information, ProEdge is hindered in crafting an effective argument to refute the $9.4 million in lost profit damages and a 14-17% royalty rate. Sterisil could not have reasonably believed that dumping 193,609 documents on ProEdge was an adequate response to the Court's instruction. And if there are relevant documents contained in the haystack, ProEdge will not be able to discover them before trial.

Even if ProEdge were able to find the needle in the haystack in time, it is prejudiced by the delayed nature of this production. First, ProEdge's own damages expert did not have this information available for use in his rebuttal report to Mr. Chavez's opinion. Second, fact discovery has closed, and so have the important

11

depositions in this case. ProEdge is not able to question witnesses, custodians, or other experts about the missing marketing information ahead of trial. Third, ProEdge was not able to use it in its motion for summary judgment, of which the briefing window closed today, May 2, 2018. Finally, engaging in a review would hinder ProEdge's counsel, who are already engaged in trial preparation. This document dump truly amounts to a "trial by ambush" or an attempt to obtain a delay.  ProEdge, however, is not interested in a delay and it would be improper to allow Sterisil to obtain a trial delay as a result of its own discovery abuse. ProEdge has been waiting five years to finally resolve this case either by summary judgment or by trial starting on May 21, 2018. Continuing to prolong this case by pushing the trial date is simply exchanging one form of prejudice for another. Justice delayed is justice denied. *Wodiuk v. Graziano*, 2017 U.S. Dist. LEXIS 86948, at *23 (D. Colo. June 6, 2017) ("there is no question that [the defendant] has been subject to prolonged delay through no fault of her own").[4]

### C. Sanctions Are Appropriate in This Case.

Sterisil has had *five years* to collect and produce this information, but of its own accord, has failed to do so.

***First***, this case has been frivolous from the beginning. ProEdge's patent prosecution counsel, James Brown, sent Sterisil a letter clearly delineating that ProEdge's BluTab product does not infringe the '736 Patent. *See* **Exh. B** (J. Brown Letter to B. Downs). That letter was underpinned by detailed diligence—an opinion of

---

[4] Recall that it was ProEdge who moved to re-open the case after administrative closure in January of 2017.  ECF No. 50.  Sterisil is content to let the case remain pending and improperly leverage the existing lawsuit against ProEdge in the marketplace.

12

counsel letter—sought by ProEdge when the allegations first arose (and produced in this case). Seven years later, Sterisil filed this lawsuit and has done everything possible to drag it out as long as possible to gain a market advantage.

**Second**, as a result of Sterisil's bad faith litigation and unacceptable document dump, the appropriate remedy is for this Court to strike Sterisil's two damages theories and its claim for willful infringement. Fed. R. Civ. P. 37(b)(2)(A)(ii) ("'prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence"); *see also Nike*, 43 F.3d at 648 (striking Nike's doctrine of equivalents theory for failure to produce discovery concerning these allegations); *City of Aurora*, 720 F. Supp. 2d at 1262 ("the Court is essentially precluding the patentees from pursuing their [damages] counterclaims" because "patentees have not shown any justification for their failure to disclose the bases" of their theories). Sterisil did not produce documents relevant to these issues and thus, they should not be in the case. Fed. R. Civ. P. 26(g)(1)(A) ("by signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief after a reasonable inquiry, with the respect to a disclosure, it is complete and correct as of the time it is made").

**Alternatively**, if Sterisil is allowed to keep these theories, at the very least there should be harsh jury instructions, instructing the jury to assume that the documents that would have been produced in accordance with this Court order would have shown that ProEdge did not act willfully, that Sterisil has not been damaged, and that Sterisil did nothing to enforce its rights between 2006 and 2013. Fed. R. Civ. P. 37(b)(2)(A)(i)

("directing that matters embraced in the order or other designated facts be taken as established for purposes of the action").

## V. CONCLUSION

Sterisil's actions with regard to discovery in this lawsuit are egregious. It has willful disregarded for mandated discovery procedures and this Court's order to produce documents responsive to ProEdge's March 27 Letter, and instead produced 193,609 unsearchable documents with less than three weeks before trial. For the foregoing reasons, Sterisil should be sanctioned for its misconduct by the Court precluding its damages and willful infringement theories from trial, and other sanctions this Court deems appropriate to remedy the manifest prejudice to ProEdge.

Dated this 2nd day of May, 2018.

*s/ Case Collard*
Case Collard
Gregory S. Tamkin
Forrest Tahdooahnippah
Lindsey Sadler
DORSEY & WHITNEY LLP
1400 Wewatta Street, Suite 400
Denver, CO   80202
Telephone:  (303) 629-3400
Facsimile:  (303) 629-3450
Email:  collard.case@dorsey.com
Email:  tamkin.greg@dorsey.com
Email: forrest@dorsey.com
Email: sadler.lindsey@dorsey.com

*Attorneys for Defendants ProEdge Dental Products, Inc. and Mark A. Frampton*

14

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2018, the foregoing document, **DEFENDANTS' MOTION FOR SANCTIONS**, was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email address:

    Ramon Pizarro
    Email:  ramon@ramonpizarro.com

    *Attorney for Plaintiff Sterisil, Inc.*

    *s/ Karen Porter*
    DORSEY & WHITNEY LLP